

IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAY -5 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------- X

EMILE MOREAU,                                      :        08-CV-1545 (ARR)

                Petitioner,         :        NOT FOR PRINT OR
                                 :        ELECTRONIC
    -against-                                :        PUBLICATION
                                 :
ROBERT ERCOLE,                                     :        OPINION & ORDER
                                 :
                Respondent.         :

----------------------------------------------------------------------- X

ROSS, United States District Judge:

        Emile Moreau petitions this court for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254. He challenges his 2004 conviction in Queens County of arson, attempted murder, and

related crimes. For the reasons set forth below, his petition is denied.[1]

## I. BACKGROUND

**A.    Trial**

        Petitioner was tried by jury for crimes related to a December 4, 2000 fire at his building

in Hollis, Queens. According to the prosecution's theory of the case, petitioner was in arrears on

his mortgage, and he started the fire in order to collect the insurance proceeds. He asked an

acquaintance, Vincent Allen, to help him spray gasoline in the building and then set the fire

while Allen was in the basement, locking him inside the building to die. Allen survived and was

a principal witness against petitioner at trial. Other prosecution witnesses included two fire

marshals and a police detective who investigated the fire, as well as firefighters who responded

to the scene, representatives of the insurance company and the bank that held the mortgage, and

---

[1] Petitioner has requested that the court appoint counsel to assist him in this proceeding. A threshold inquiry on such a motion is whether the movant's position appears to have some chance of success. See Hodge v. Police Officers, 802 F.2d 58, 60 (2d Cir. 1986); Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 204 (2d Cir. 2003). Because the court finds that petitioner's claims lack merit, his motion for the appointment of counsel is denied.

petitioner's former landlord, who corroborated Allen's testimony about how Allen knew petitioner. One of the firefighters testified that he had rescued petitioner's tenant Genaro Mendez Perez from an apartment on the second floor of the building and that he was unaware of any other person rescued from the second floor.

The defense asserted that petitioner did not know Allen and was not with him on the night of the fire. Petitioner testified in his own defense and presented two witnesses who testified that he was with them that night, drinking at a club. According to petitioner's testimony, he came home drunk and was helped to bed by one of his tenants, Steven Hillaire, who was leaving early for work. He was then awakened by the fire and the shouting of his other tenant, Genaro Mendez Perez, who was already outside. Also according to his testimony, petitioner was rescued by firefighters from the second floor of the building. Neither of his tenants could be located to testify at trial.

On February 13, 2004, the jury found petitioner guilty of arson in the first degree, attempted murder in the second degree, conspiracy in the second degree, reckless endangerment in the first degree, and three count of assault in the second degree. He was sentenced to an indeterminate sentence of twenty years to life imprisonment.

**B.    Post-Trial Procedural History**

Petitioner appealed his conviction to the Appellate Division, Second Department. His appellate counsel argued that the trial court had deprived petitioner of due process and a fair trial when, in response to a jury note that indicated the jury was deadlocked eleven to one in favor of conviction, the court failed to instruct jurors not to abandon their individual beliefs. See Allen v United States, 164 U.S. 492 (1896); People v. Aponte, 2 N.Y.3d 304, 308-09 (2004). This issue was unpreserved, but petitioner's appellate counsel argued that the Appellate Division should

2

consider it "in the interest of justice." See N.Y.C.P.L. § 470.15(3)(c), (6)(a).  Petitioner filed a

supplemental, pro se brief in which he asserted a number of claims alleging ineffective assistance

of trial counsel, prosecutorial misconduct, legal error by the trial court, and incomplete and

inaccurate trial transcripts.  The Appellate Division affirmed the judgment of conviction by

decision dated November 8, 2006.  People v. Moreau, 34 A.D.3d 499 (2d Dep't 2006).  It

rejected on the merits petitioner's contentions that his trial counsel was constitutionally

ineffective, that he was deprived of due process by the prosecutor's improper summation, and

that the verdict was against the weight of the evidence.  Id.  Petitioner's other contentions, the

court found unpreserved for appellate review.[2]  Id.  On February 1, 2007, the New York Court of

Appeals denied petitioner leave to appeal.  People v. Moreau, 8 N.Y.3d 883 (2007).

Petitioner timely filed the instant petition for a writ of habeas corpus on April 4, 2008.

Because many of his claims for relief were unexhausted, petitioner subsequently sought a stay of

this action in order to collaterally attack his conviction in state court.  By order dated August 26,

2008, this court found that a stay was warranted under Rhines v. Weber, 544 U.S. 269, 277

(2005).

Petitioner applied to the Appellate Division for a writ of error coram nobis on the ground

that his appellate counsel had been constitutionally ineffective.  On October 7, 2008, the

Appellate Division denied his application on the merits.  People v. Moreau, 55 A.D.3d 630 (2d

Dep't 2008).  The Court of Appeals denied petitioner leave to appeal.  See People v. Moreau, 11

N.Y.3d 899 (2008), reh'g denied, 12 N.Y.3d 786 (2009).

Petitioner also moved in the Queens County Supreme Court for an order vacating his

judgment of conviction pursuant to N.Y.C.P.L. § 440.10.  By opinion and order dated November

---

[2] Petitioner's corresponding habeas claims are consequently procedurally defaulted.  See discussion infra Part II.A.2 at 6.

21, 2008, the court denied petitioner's motion. See People v. Moreau, No. 2742/2002 (N.Y. Sup. Ct., Queens Cnty. Nov. 21, 2008). Of the large number of claims petitioner asserted, the court found that most were procedurally barred, either because they had been raised and rejected on direct appeal, see § 440.10(2)(a), or because they should have been raised on direct appeal but unjustifiably had not been, see §§ 440.10(2)(c), (3)(a).[3] The court reached the merits of only two claims. First, the court rejected petitioner's assertion that his trial counsel had been constitutionally ineffective in waiving his right to testify before the grand jury because the claim was unsupported by any sworn allegations of fact. See § 440.30(4)(b). Second, the court dismissed petitioner's claim that his trial transcript was corrupted, as plaintiff failed to demonstrate that the alleged corruption violated his constitutional rights. See § 440.30(4)(a). Petitioner moved unsuccessfully for reconsideration, People v. Moreau, No. 2742/2002 (N.Y. Sup. Ct., Queens Cnty. Feb. 9, 2009) (denying motion), and then sought leave to appeal the court's decision to the Appellate Division pursuant to §§ 450.15, 460.15. The Appellate Division denied leave by decision and order dated April 30, 2009. People v. Moreau, No. 2742/2002 (N.Y. App. Div., 2d Dep't Apr. 30, 2009).

## II. DISCUSSION

### A.   Exhaustion and Procedural Default

1.   Legal Standard

A federal court may not grant a petition for a writ of habeas corpus unless the petitioner has first exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1)(A). In order to exhaust those remedies, a petitioner must have "fairly presented" his federal constitutional claim to the state courts by apprising them of "both the factual and the legal premises of the claim he

---

[3] Petitioner's corresponding habeas claims are consequently procedurally defaulted. See discussion infra Part II.A.2 at 7 & nn.5-7.

4

asserts in federal court." Daye v. Attorney Gen., 696 F.2d 186, 191 (2d Cir. 1982) (en banc).
The state court will have notice of the constitutional nature of a claim based on "(a) reliance on
pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing
constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to
call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts
that is well within the mainstream of constitutional litigation." Id. at 194 (citations omitted).

An unexhausted claim that can no longer be exhausted is deemed procedurally defaulted.
See Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) ("[W]hen 'the petitioner failed to exhaust
state remedies and the court to which the petitioner would be required to present his claims in
order to meet the exhaustion requirement would now find the claims procedurally barred,'
federal habeas courts also must deem the claims procedurally defaulted." (quoting Coleman v.
Thompson, 501 U.S. 722, 735 n.1 (1991))). Furthermore, where there has been actual and
explicit reliance upon a procedural bar to dispose of a claim in state court, there is an "adequate
and independent state ground" for the judgment, prohibiting federal habeas review. See Harris v.
Reed, 489 U.S. 255, 261 (1989); Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) (state
court's reliance must be "unambiguous and clear from the face of the opinion"). But see Lee v.
Kemna, 534 U.S. 362, 376, 381 (2002) (noting the existence of a "small category" of
"exceptional cases in which exorbitant application of a generally sound rule renders the state
ground inadequate to stop consideration of a federal question"). This is so even where the state
court reaches the merits in an alternative holding. Harris, 489 U.S. at 264 n.10; Velasquez v.
Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

2.    Petitioner's Federal Habeas Claims

The instant petition for a writ of habeas corpus, dated on April 4, 2008, raises myriad

claims for relief, organized into four categories: ineffective assistance of trial counsel, ineffective

assistance of appellate counsel, prosecutorial misconduct, and misconduct and error by the trial

court. Of these claims, all but a small number are unexhausted and procedurally defaulted.

Petitioner, however, successfully exhausted seven claims, each of which is addressed below on

the merits. Specifically, the court will address petitioner's claims that his trial counsel was

constitutionally ineffective because he (1) failed to vindicate his right to testify before the grand

jury, (2) failed to properly investigate his case and locate certain witnesses to testify, (3) failed to

effectively impeach Vincent Allen and the fire marshal witnesses, (4) failed to request an

accomplice-corroboration jury charge, and (5) made prejudicial comments in front of the jury;

(6) that his appellate counsel was ineffective; and (7) that he was denied due process on appeal

because his trial record was corrupted. Finally, the court reaches petitioner's unexhausted but

not procedurally defaulted claim that he was deprived of due process and the effective assistance

of counsel because the prosecutor induced petitioner's wife not to testify on his behalf by

offering leniency to her son in the son's own criminal case, an illicit deal known to trial counsel,

who did nothing to protect petitioner's rights.

Petitioner's remaining claims are procedurally defaulted.[4]  Because petitioner failed to

preserve them for appellate review, his claim that the trial court failed to instruct jurors not to

abandon their individual beliefs and his claims related to the introduction of evidence of

petitioner's incarceration at the time of trial are procedurally barred. See Moreau, 34 A.D.3d

_____

[4] Petitioner has filed a motion seeking discovery of an allegedly exculpatory fire department report. Because the court finds that his claims with respect to this report are procedurally barred, his motion for discovery is denied. See Harris v. Nelson, 394 U.S. 286, 300 (1969) (habeas petitioner entitled to discovery if there are specific allegations before the court that demonstrate that petitioner may, if the facts are fully developed, be able to prove that he is entitled to habeas relief).

499. His other claims of prosecutorial misconduct[5] and of error and misconduct by the trial court[6] are procedurally barred because they appeared, or could with due diligence have readily been made to appear, on the face of the trial record but he failed to raise them on direct appeal. See N.Y.C.P.L. §§ 440.10(2)(c), (3)(a); Moreau, No. 2742/2002 (N.Y. Sup. Ct., Queens Cnty. Nov. 21, 2008), slip op. at 6-7. Also barred for this reason are petitioner's remaining on-the-record claims that his trial counsel was constitutionally ineffective.[7] See § 440.10(2)(c); Moreau, No. 2742/2002 (N.Y. Sup. Ct., Queens Cnty. Nov. 21, 2008), slip op. at 6.

### 3. Overcoming Procedural Default

This court cannot consider petitioner's procedurally defaulted claims unless he can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. To show cause, a petitioner must show that "'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." McCleskey v. Zant, 499 U.S. 467, 493 (1991) (quoting Murray v. Carrier, 477 U.S.

---

[5] These claims of prosecutorial misconduct are petitioner's allegations that the prosecutor knowingly misrepresented information regarding petitioner's car and made inflammatory and untrue statements in summation, by telling the jury that petitioner had made an inculpatory statement to a fire marshal, that petitioner's tenant Genaro Mendez Perez was rescued by firefighters, and that petitioner had made up a story regarding the robbery of his building prior to the fire.

[6] These claims of trial court error and misconduct are petitioner's allegations that the trial court violated his rights to due process and a fair trial because it allowed the prosecutor to commit "perjury" before the jury; excluded all evidence in petitioner's favor; refused to charge the jury regarding alibi witnesses and instead instructed the jury to disregard petitioner's alibi witnesses; prevented defense counsel from impeaching prosecution witnesses; told defense counsel not to concern himself with petitioner's culpability; summarily overruled all of defense counsel's objections and reprimanded him in front of the jury; ordered that petitioner be produced for trial when he was ill; restricted petitioner's testimony in his own defense; made prejudicial comments during trial; taunted petitioner at sentencing, stating that the jury had been tricked into finding petitioner guilty; and arbitrarily adjourned the proceedings to disrupt defense counsel's cross-examination and to deny petitioner a public trial.

[7] These ineffective-assistance claims are petitioner's allegations that his trial counsel asked the court to keep petitioner behind bars; failed to adduce evidence that was favorable to petitioner; failed to request that the court give a supplemental charge instructing jurors not to abandon their individual beliefs; conspired with the prosecutor and the court to prevent the jury from reviewing the complete video of Vincent Allen's recorded statement to the police and fire marshals; failed to object to the prosecutor's improper summation, thus precluding appellate review; and told the jury during his opening statement that the defense would prove that petitioner did not know Allen.

478, 488 (1986)).  To show prejudice, a petitioner must demonstrate that the alleged error

"worked to his actual and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions."  Torres v. Senkowski, 316 F.3d 147, 152 (2d Cir. 2003) (internal

quotation marks and citation omitted).  If a petitioner is unable to show cause and prejudice, his

procedural default may nonetheless be excused if he can show that a fundamental miscarriage of

justice would result from a failure to hear the claim on the merits, in other words, "that he is

actually innocent of the crime for which he has been convicted."  Dunham v. Travis, 313 F.3d

724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)).  But cf. Doe v.

Menefee, 391 F.3d 147, 161 (2d Cir. 2004) (noting that "credible claims of actually innocence

are 'extremely rare'" (citing Schlup, 513 U.S. at 321-22)).  In order to overcome a procedural

default on this ground, a petitioner "must establish that, in light of new evidence, it is more likely

than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."

House v. Bell, 547 U.S. 518, 536-37 (2006) (citation omitted).  Such a claim requires "new

reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness

accounts, or critical physical evidence—that was not presented at trial."  Id. at 537 (citation

omitted).

Petitioner in this case cannot overcome the procedural bar with respect to his defaulted

claims.  First, he cannot show a miscarriage of justice because, although he asserts that he is

innocent, he has not proffered new evidence that demonstrates his innocence.  Second, he cannot

show cause for his default.  Petitioner's only plausible assertion of cause is that his trial and

appellate counsel were constitutionally ineffective in failing to preserve issues for habeas review.

"A defense counsel's ineffectiveness in failing to properly preserve a claim for review in state

court can suffice to establish cause for a procedural default only when the counsel's ineptitude

8

rises to the level of a violation of a defendant's Sixth Amendment right to counsel." Aparicio v.
Artuz, 269 F.3d at 91 (citing Edwards v. Carpenter, 529 U.S. 446, 451 (2000)). Because, as
discussed below, the court finds that petitioner's ineffective-assistance claims are without merit,
they cannot establish cause for petitioner's procedural default.

**B.     Standard of Review under AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a
deferential standard of federal habeas review of state convictions where the state court has
adjudicated a petitioner's federal claim on the merits. See 28 U.S.C. § 2254(d). Under the
AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision
"was contrary to, or involved an unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States," or "was based on an unreasonable
determination of the facts in light of the evidence presented in the State court proceeding." Id.
The statutory language "clearly established Federal law, as determined by the Supreme Court of
the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's
decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362,
412 (2000); see also Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001).

A state court decision is "contrary to" clearly established Supreme Court precedent if
"the state court applies a rule that contradicts" Supreme Court precedent or if "the state court
confronts a set of facts that are materially indistinguishable from a decision of [the Supreme]
Court and nevertheless arrives at a result different from that precedent." Williams, 529 U.S. at
405-06. A decision is an "unreasonable application" of clearly established federal law if a state
court "identifies the correct governing legal principle from [the Supreme Court's] decisions but
unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. In determining

9

whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. A federal habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

## C.   Ineffective Assistance of Trial Counsel

A Sixth Amendment ineffective-assistance-of-counsel claim inherently invokes "clearly established" federal law within the meaning of AEDPA. Williams, 529 U.S. at 390-91; Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001). Under Strickland v. Washington, a defendant claiming ineffective assistance of counsel must establish that (1) his counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. 466 U.S. 668, 687-94 (1984). Under the performance prong of this standard, a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Helgesen, 669 F.2d 69, 72 (2d Cir. 1982) ("Trial advocacy is an art, and the advocate must be given some latitude in deciding upon an appropriate trial strategy."). Under the prejudice prong, "[t]he benchmark . . . must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," Strickland, 466 U.S. at 686, such that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt" Henry v. Poole, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 695).

10

"The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Richter, 131 S. Ct. at 788 (internal quotation marks and citations omitted). Moreover, because the Strickland standard is a general one, "the range of reasonable applications is substantial." Id.; Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009); Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations"). The question before this court, therefore, is "whether there is any reasonable argument that [petitioner's] counsel satisfied Strickland's deferential standard." See Richter, 131 S. Ct. at 788.

With respect to each reviewable issue that petitioner has identified, he fails to show that his trial counsel's performance was deficient, much less that he was prejudiced or that the New York courts' application of the Strickland standard was unreasonable. Moreover, upon review of the record as a whole, it is clear that petitioner's counsel mounted a vigorous, competent defense.

1.    Grand Jury Right

Petitioner argues that his counsel was ineffective because he waived petitioner's right to testify in the grand jury despite petitioner's expressed desire to do so, and then failed to move to dismiss the indictment on the basis of this grand jury defect. These claims are not cognizable on federal habeas review because "the right to testify before a grand jury is purely a New York state statutory right, and is not a constitutional right that can lead to relief on habeas review." Johnson v. Taylor, No. 08-CV-2442, 2010 WL 2735770, at *6 (E.D.N.Y. July 8, 2010); Byrd v. Demarco, No. 11-CV-0750, 2011 WL 809657 (E.D.N.Y. Feb. 25, 2011). As the New York Court of Appeals has explained, a "defendant's right to appear as a witness before the Grand Jury, in contrast to his Sixth Amendment constitutional right to submit evidence on his own

11

behalf at trial, is derived exclusively from statute." People v. Smith, 87 N.Y.2d 715, 724 (1996) (citing N.Y.C.P.L. § 190.50(5)). Therefore, an attorney's "failure to secure petitioner's presence before the grand jury does not constitute ineffective assistance." Affser v. Murray, No. 04-CV-2715, 2008 WL 2909367, at *7 (E.D.N.Y. July 28, 2008).

In addition, it is well settled that any possible defect in the grand-jury proceeding is cured by a subsequent conviction. See Ballard v. Costello, No. 01-CV-1000, 2001 WL 1388297, at *2 (E.D.N.Y. 2001) (citing Lopez v. Riley, 865 F.2d 30, 32 (2d Cir.1989); Velez v. People of the State of New York, 941 F. Supp. 300, 316 (E.D.N.Y.1996)); see also United States v. Mechanik, 475 U.S. 66, 70 (1986) (subsequent guilty verdict by petit jury renders any error in the grand jury proceedings harmless beyond a reasonable doubt).

2.    Inadequate Investigation and Missing Testimony

Petitioner argues that his trial counsel was ineffective because he failed to properly investigate and research petitioner's case. "While failure to conduct adequate pre-trial investigation may serve as the basis for a claim of ineffective assistance of counsel under Strickland, see 466 U.S. at 690-91, a petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation." Taylor v. Poole, No. 07-CV-6318, 2009 WL 2634724, at *14 (collecting cases). Where a petitioner claims that counsel should have investigated potential witnesses, he must demonstrate that they would have testified at trial and explain the expected nature of their testimony. Id. at *15; McCarthy v. United States, No. 02-CV-9082, 2004 WL 136371, at *17 (S.D.N.Y. Jan. 23, 2004) ("Courts have viewed claims of ineffective assistance of counsel skeptically when the only evidence of the import of a missing witness' testimony is from the petitioner.") (citations

omitted); Ortiz v. Heath, No. 10–CV–1492, 2011 WL 1331509, at *11-12 (E.D.N.Y. Apr. 6, 2011).

Petitioner's only specific claim with respect to his trial counsel's investigation is that counsel failed to locate witnesses to testify on his behalf. First, petitioner faults his counsel's failure to call petitioner's tenants, Genaro Mendez Perez and Steven Hillaire, as witnesses. The record is clear, however, that these individuals could not be located with diligent efforts. Detective William Ryan testified at trial that he had searched for both tenants during his investigation of the fire. Trial Transcript ("Tr.") 1323-24. As part of his search, he talked with the emergency medical team that had responded to the scene on the night of the fire, checked relocation records at the American Red Cross, contacted postal inspectors regarding forwarding addresses, ran computer searches on the tenants' names, and canvassed petitioner's neighborhood. Id. Detective Ryan was unable to locate either tenant. Id. In light of this evidence, petitioner has adduced no reason to believe that his trial counsel's investigation was deficient. Moreover, petitioner cannot show prejudice from the absence of his tenants' testimony since no evidence suggests that they would have supported his version of events. See Carneglia v. United States, No. 03-CV-6388, 2006 WL 148908, at *4 (E.D.N.Y. Jan.18, 2006) (rejecting challenge based on failure to call defense witnesses where "petitioner has not provided affidavits from the potential witnesses nor any assurance they would have appeared at trial had counsel interviewed them").

Second, petitioner faults his counsel's for failing to call a witness to confirm that petitioner had been rescued from his building by firefighters. This claim is belied by the record, which reflects that petitioner's trial counsel diligently investigated the source of an inadmissible report that petitioner had been rescued but was ultimately unable to locate a witness who had

13

personal knowledge of such a rescue. See Tr. 1425-26. Therefore, it was not an unreasonable

application of clearly established federal law to find that petitioner's counsel's attempts to locate

witnesses were constitutionally sufficient.

      3.     Cross-Examination of Prosecution Witnesses

In arguing that his trial counsel was constitutionally ineffective in impeaching

prosecution witnesses, petitioner bears a particularly high burden. The Second Circuit has

repeatedly held that "the conduct of examination and cross-examination is entrusted to the

judgment of the lawyer" and should not be second-guessed "unless there is no strategic or

tactical justification for the course taken." United States v. Luciano, 158 F.3d 655, 660 (2d Cir.

1998) (citing United States v. Eisen, 974 F.2d 246, 265 (2d Cir.1992)); see also, e.g., United

States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.1987) (describing the decision of counsel

whether to engage in cross-examination and the extent of cross-examination as "strategic in

nature").

Petitioner fails to overcome the presumption that his counsel's choices on cross-

examination "might be considered sound trial strategy." See Strickland, 466 U.S. at 689

(internal quotation marks and citation omitted). First, petitioner argues that counsel should have

impeached Vincent Allen with respect to the burn on the back of his hand. Petitioner asserts that

an expert could have shown that this burn was inconsistent with clutching the handle of a door,

indicating that Allen was lying about the door being locked when he tried to exit petitioner's

building. Second, petitioner asserts that his counsel should have cross-examined Allen with

respect to the roll-down gates in front of the businesses on the first floor of petitioner's building.

Petitioner argues that the absence of these gates from Allen's account of the fire suggests that

Allen actually entered the building through the back when he came to set the fire. Petitioner's

counsel was not ineffective for choosing not to cross-examine Allen in the way that petitioner

now suggests.  Counsel reasonably decided to focus instead on Allen's criminal past,

inconsistencies between his statement and his testimony, his limited familiarity with petitioner,

his cooperation agreement, and his motive to lie.  He cross-examined Allen extensively about

these topics.  See Tr. 905-1001.  Finally, petitioner's argument that his trial counsel should have

cross-examined the prosecution's fire-marshal witnesses about why they didn't take samples of

his clothing on the morning after the fire is similarly unavailing.  It was uncontested that

petitioner was not a suspect at that time.  Petitioner's counsel reasonably decided to focus his

cross-examination on other matters, such as a fire marshal's report that petitioner had smelled of

smoke (but not gasoline) on the morning of the fire.  See Tr. ·1090-94.  Petitioner has given the

court no reason to doubt that his counsel's cross-examination decisions represented sound trial

strategy.

    4.    Accomplice-Corroboration Charge

Petitioner asserts that his attorney was ineffective for failing to request that the judge

charge the jury that Vincent Allen was petitioner's accomplice as a matter of law, such that

Allen's testimony could not be the basis of a conviction unless it was supported by corroborative

evidence.  See N.Y.C.P.L. § 60.22(1).[8]  However, counsel made an affirmative, strategic

decision to request that an accomplice corroboration charge not be given, Tr. 1735-36, and

"strategic choices made after thorough investigation of law and facts relevant to plausible

options are virtually unchallengeable."  Strickland, 466 U.S. at 690.  Petitioner had testified that

---

[8] Although New York law requires accomplice corroboration, the Due Process Clause of the United States
Constitution does not.  See United States v. Hamilton, 334 F.3d 170, 179 (2d Cir. 2003) ("The testimony of a single
accomplice is sufficient to sustain a conviction so long as that testimony is not incredible on its face and is capable
of establishing guilt beyond a reasonable doubt.") (internal quotation marks omitted and citation)); Scott v. Unger,
No. 08-CV-0145, 2010 WL 3241825, *13-14 (W.D.N.Y. Aug.16, 2010) (collecting cases refusing to consider New
York's accomplice corroboration rule in the habeas context).

he didn't know Allen and had nothing to do with the arson. His counsel evidently felt that it would undercut his version of the events to instruct the jury that he and Allen were accomplices.

     5.    Prejudicial Comments

Petitioner's claim that his attorney made prejudicial comments about him in front of the jury is belied by the record. First, petitioner asserts that his attorney accused him of committing the arson by asking him, "On the day of your fire, was your gas working." See Tr. 1700. A fair reading of the transcript does not support the inference that petitioner's counsel was accusing him of anything by using the phrase "your fire." Instead, counsel was merely referring to the fire in the building where petitioner lived and worked. Second, petitioner faults his attorney for saying to petitioner during his testimony, "I am sorry; you're starting to mumble now. The jury really needs to hear what you're saying." See Tr. 1524. Petitioner argues that this statement gave the jury the impression that he was lying or trying to hide something. A more plausible reading is that petitioner's counsel wanted to make sure that the jury could hear petitioner's exculpatory testimony.

**D.**    **Ineffective Assistance of Appellate Counsel**

A criminal defendant has a right to the effective assistance of counsel on his first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 396 (1985). Thus, the two-prong Strickland test also applies to claims of ineffective assistance of appellate counsel. See Aparicio, 269 F.3d at 95 (citing Evitts, 469 U.S. at 396-97). In order to demonstrate the constitutionally deficient performance of appellate counsel, it is insufficient to show merely that counsel omitted a non-frivolous argument. See Smith v. Robbins, 528 U.S. 259, 288 (2000) (appellate counsel may appropriately "select from among" potential non-frivolous claims "to maximize the likelihood of success of appeal") (citing Jones v. Barnes, 463 U.S. 745 (1983)); see also Smith v. Murray, 477

U.S. 527, 536 (1986) ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (quoting Barnes, 463 U.S. at 751-52). Rather, a petitioner must show that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000).

Petitioner bases his ineffective-assistance claim on his appellate counsel's failure to raise a number of potential claims on appeal. The record indicates, however, that petitioner's appellate counsel's performance was not deficient. She thoroughly researched his case and reasonably determined that his strongest argument on appeal was that the court erred in failing to instruct the jury members not to abandon their individual beliefs in the face of a jury note indicating that the jury was deadlocked eleven to one in favor of conviction. This issue was unpreserved, but appellate counsel argued that the Appellate Division should reach it in the interest of justice. Moreover, petitioner cannot show prejudice from his appellate counsel's failure to raise other issues. In a supplemental brief, petitioner himself raised most of the other issues he now contends that his appellate counsel should have raised, and the Appellate Division rejected them. To the extent that they are subject to federal habeas review, this court has also found them to be without merit.

**E.     Corrupted Trial Record**

Petitioner asserts that his trial attorney, the prosecutor, and the trial court conspired to corrupt the trial transcript, essential for his appeal, and that his appellate counsel failed to move to resettle the transcript. When a convicted defendant has a statutory right to an appeal, he also has due process rights relating to the record of his trial. See Halbert v. Michigan, 545 U.S. 605,

17

610 (2005); Ake v. Oklahoma, 470 U.S. 68, 76 (1985); Taveras v. Smith, 463 F.3d 141, 147-48 (2d Cir. 2006). While there is no constitutional right to an "absolutely accurate" transcript, Burrell v. Swartz, 558 F. Supp. 91, 92 (S.D.N.Y. 1983), the transcript must be "reasonably accurate." Benjamin v. Greiner, 296 F. Supp. 2d 321, 333 (E.D.N.Y. 2003) (quoting Curro v. Watson, 884 F. Supp. 708, 719 (E.D.N.Y. 1995), aff'd 100 F.3d 942 (2d Cir. 1996)). If the state fails to provide a "fair and adequate procedure" to settle the record, or the transcript has been the subject of intentional tampering by a state official, "the due process clause of the fourteenth amendment might be violated." Burrell, 558 F.Supp. at 92. In order to prevail on a claim that the transcript is inaccurate, as opposed to incomplete, a petitioner must overcome the presumption of regularity that attaches to criminal proceedings by substantial evidence to the contrary. Ford v. Phillips, No. 03-CV-2077, 2007 WL 957536, at *9 (E.D.N.Y. Mar. 29, 2007); Shire v. Costello, No. 07-CV-285, 2008 WL 2323379, at *7 (N.D.N.Y. June 2, 2008). In addition, a petitioner must show actual prejudice resulting from the inaccurate or incomplete transcript. See Shire, 2008 WL 2323379, at *7. "Speculation that the missing or incomplete portions of the transcript may reflect reversible error is not enough." Id. (internal quotation marks and citation omitted).

Petitioner has adduced no evidence to overcome the presumption of regularity that attaches to his trial transcript. His appellate counsel reviewed the transcript thoroughly in light of petitioner's concerns about its accuracy and found that "nothing appear[ed] amiss." See Affirmation of Appellate Counsel in Response to Appellant's Motion for a Writ of Error Coram Nobis, dated August 6, 2008, ¶ 8. This court has also reviewed petitioner's trial transcript and found no support for his assertion that it is corrupted.

**F.      Illicit Deal to Keep Petitioner's Wife from Testifying**

Finally, petitioner alleges that he was deprived of due process and the effective assistance

of counsel because the prosecutor induced petitioner's wife not to testify on his behalf by

offering leniency to her son in the son's own criminal case, which was allegedly known by trial

counsel, who took no action to protect petitioner's rights.[9]  Petitioner provides no affidavit from

his wife nor any other evidence or information to substantiate this claim.  Therefore, it is denied.

### III.  CONCLUSION

For the reasons stated above, the application for a writ of habeas corpus is denied, and the

petition is dismissed.  Because petitioner has not made a substantial showing of the denial of a

constitutional right, a certificate of appealability will not issue. See 28 U.S.C.A. § 2253(c)(2);

Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  In addition, this court certifies pursuant to 28

U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith.  Coppedge v. United

States, 369 U.S. 438, 444-45 (1962).  The Clerk of the Court is directed to close this case.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated:        May 2, 2011
              Brooklyn, New York

---

[9] Although this claim is unexhausted, the court considers it on the merits under 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

**SERVICE LIST**

Pro Se Petitioner
Emile Moreau
04A1588
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582


Counsel for Respondent
Jennifer Hagan
Queens District Attorney's Office
125-01 Queens Blvd
Kew Gardens, NY 11415